UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JONATHON P. SHULL,                                                    Plaintiff,

v.                                                    Civil Action No. 3:19-cv-P412-DJH

SOUTHERN HEALTH PARTNERS *et al.*,                                    Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the renewed motions for summary judgment filed by

Defendants Southern Health Partners ("SHP") and Nurses Amber, Fernando, Cathleen Godsey,

and Meranda Santoes (the "SHP Defendants") (Docket No. 54) and by Defendants Josh

Lindblom and Hardin County (DN 55).  Proceeding *pro se*, Plaintiff Jonathon P. Shull filed a

response to the motions, which he also captioned as a motion for summary judgment (DN 56).

Defendants Linbdlom and Hardin County filed a response to Plaintiff's motion (DN 59).  The

SHP Defendants did not file a response or reply, and the time for doing so has passed.  The

motions being ripe for adjudication, the Court will grant the renewed motions for summary

judgment by Defendants and deny Plaintiff's motion for the reasons that follow.

## I.

Plaintiff was a pretrial detainee during the bulk of the time period alleged in the

complaint.[1]  By Memorandum and Order (DN 53) entered December 10, 2021, the Court denied

the motions for summary judgment by the SHP Defendants (DN 45) and by Hardin County and

Lindblom (DN 46) finding that their motions no longer applied the correct legal standard

---

[1] As discussed below, Plaintiff entered the Hardin County Detention Center ("HCDC") as a pretrial detainee on February 20, 2019 (DN 1, PageID.4).  He was convicted in Hardin Circuit Court on May 24, 2019 (DN 55, PageID.688).  According to Defendants Lindblom and Hardin County, Plaintiff was transferred to the Green River Correctional Complex on July 10, 2019 (*Id.*, PageID.689).

because, while the motions were pending, the Sixth Circuit announced a new standard for deliberate-indifference claims brought by pretrial detainees in *Brawner v. Scott Cty.*, 14 F.4th 585, 596 (6th Cir. 2021). The Sixth Circuit held that the Fourteenth Amendment standard applicable to claims by pretrial detainees required a modification to the subjective prong of the deliberate-indifference test applicable to convicted inmates under the Eighth Amendment. The Court, therefore, denied Defendants' motions for summary judgment without prejudice to them refiling their motions within 30 days. Defendants filed renewed motions, which are now before the Court for consideration.

## A.

Plaintiff initiated this 42 U.S.C. § 1983 action by filing a complaint signed under penalty of perjury (DN 1). He originally named SHP as the only Defendant. (*Id.*) He alleged that on February 20, 2019, his finger was broken by Kentucky State Police officers. (DN 1, PageID.4). He stated, "I was then brought to jail and got no medical treatment for my finger . . . ." (*Id.*) He maintains that approximately two weeks later his finger became infected. (*Id.*) He stated that "again I went to nurse they said it was cosmedic and don't treat that kind of injury." (*Id.*) Plaintiff asserted that on or around March 20, 2019, he "wrote the jailer head nurse filing agrevince and finly was told Ill be going to outside Dr." (*Id.*) He stated that when he went to the outside doctor he was told that his finger was dislocated and "infected to the point it has to be cut off or fiused strait and will no longer work again." (*Id.*) He maintained that he was right-handed and "permenitly handy cap now . . . ." (*Id.*)

Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's claim to proceed against SHP for further development (DN 13). The Court also

allowed Plaintiff an opportunity to amend his complaint to name as Defendants the individual(s) who allegedly failed to treat his finger injury.

Plaintiff then filed an amended complaint signed under penalty of perjury, in which he sued Lindblom and four SHP nurses—Godsey, Fernando, Santoes and Amber (DN 15).  He sued each Defendant in his or her individual and official capacity.  Plaintiff asserted that on February 20, 2019, his finger "was cut and very badly wounded by Ky St Police." (*Id.*, PageID.60).  He stated, "I was thin take to Hardin County Hospital I was breafly seen for my injures and had fallow up apointments n the jail wouldn't treat my finger 'right ring finger' or wouldn't do the fallow up apointments I had for the docter."  (*Id.*)  He continued, "So after not being seen and my finger getting worsts I then started filling out medical reqest forms . . . and then agreavinces forms so I did fallow all chain of comand aproxmitly two weeks after being in the jail my right ring finger became infected" and that he "couldn't straitin my finger out at all."  (*Id.*)  Plaintiff maintained that after "several named nurse staff nurse Fernando looked at it and said we don't treat that kind of injury said it was cosmetic so after seeing several nurses and no one would help me it was so bad a few c/os seen it and called the nurse themselves."  (*Id.*)  He further stated that he "told the nurse Cathleen Godsey that I couldn't wipe my buttox and she said use your other hand."  (*Id.*)

Plaintiff asserted that "at this point I wrote Head Nurse the Jailer Cap Kineline Josh Lindblom and told them what Ive been going through and I had to write them more than once after all that I was finly told I would be going to Jewish Hospital in Louisville Kloots and Klinez Hand Specialist 20th March 2019."  (*Id.*)  He stated that when he went to the appointment he "was told my finger was so far gone the infection had ate out the cartlage in the knuckle of my right ring finger and that finger would never work again that it needed to be fiused strait or

3

removed at this time." (*Id.*, PageID.61).  He maintained that he is right-handed and "permenitly handy cap now over these said nurse staff members and Big Josh Jailer neglect.  Im a carpentir by trade."  He states that "Lindblom new about my injurys for a long time befor taking me to hospital" and that "he new the nurse staff wasn't seeing me so I feel hes at fault as well." (*Id.*) Plaintiff asserted, "Ive had even [illegible] after care and more appointments surgury Jun 18th 2019 and never got the surgery never get my after care." (*Id.*)  He states, "I can prove how my finger went from fixable to not and prove my case." (*Id.*, PageID.62).

Upon initial review of the amended complaint, in addition to the claim against SHP that had already been allowed to proceed, the Court allowed Plaintiff's claims to proceed against Lindblom, Godsey, Fernando, Santoes and Amber in his or her individual and official capacities (DN 18).  The Court found that Plaintiff's official-capacity claim against Lindblom, an employee of Hardin County, was actually brought against Hardin County and directed the Clerk of Court to add Hardin County as a Defendant to the action.

**B.**

In their renewed motion for summary judgment (DN 54), the SHP Defendants argue that Plaintiff has not provided sufficient evidence to establish that they were deliberately indifferent to his serious medical needs under the modified Fourteenth Amendment standard adopted by the Sixth Circuit in *Brawner v. Scott Cty.*, 14 F. 4th 585 (6th Cir. 2021).  They point to Plaintiff's medical records which document his treatment while at HCDC.[2]  They assert that immediately before Plaintiff's entry into HCDC on February 20, 2019, he was evaluated in the Hardin Memorial Hospital Emergency Department.  (DN 54, PageID.568).  The SHP Defendants attach

---

[2] After the SHP Defendants omitted their attachments when filing their renewed motion for summary judgment, upon the Court's Order, they filed the attachments in a separate docket entry (DN 61).  They later filed an amended notice of filing exhibits (DN 62) in which they provided a list of the documents filed in DN 61.

"General Instructions" issued by the Hardin Memorial Hospital, which document that Plaintiff was evaluated for the following conditions:

> General medical examination-the patient has been cleared for prison with outpatient care as specified.
> Single superficial laceration to the scalp.
> Cellulitis in the right middle finger.
> Multiple contusions to the scalp, head, right hand and right knee and left knee.
> Complete laceration of the extensor tendon of the third finger, at the level of the digit (Chronic).

(DN 61, PageID.716).  As the listed "Instructions[,]" the record provides for treatment of Plaintiff's scalp wound and for removal of the staples administered.  (*Id.*)  Also after "Instructions[,]" the record states, "Further evaluation is necessary.  It is very important to follow up with a healthcare provider.  GENERAL WARNINGS:  Return or contact your physician immediately if your condition worsens or changes unexpectedly, if not improving as expected, or other problems arise.  Specifically return if problem worsens."  (*Id.*)  The record also states, "Follow-up with HAND CARE JEWISH . . . Call for the next available appointment.  Reason for referral: evaluation, treatment and Right middle[3] finger."  (DN 61, PageID.717).  Directly beneath that language is a handwritten notation stating, "Appt. Scheduled for 3/25/19 @ 10:15AM" and apparently signed by a medical provider; however, it is unclear when the note was written.  (*Id.*)  The record also shows that Plaintiff was given two prescriptions:  "Bactrim DS 2 tablets every 12 hours for 10 days, Keflex 500 mg every 6 hours for 7 days."  (*Id.*, PageID.718-19).

---

[3] Plaintiff's claims in this action are based on alleged inadequate treatment for injury to his right *ring* finger.  The SHP Defendants do not explain the discrepancy in this record directing follow up care for Plaintiff's right *middle* finger.  Plaintiff likewise does not address the issue in his response.  For the purposes of deciding the renewed motions for summary judgment, the Court need not sort out the issue but will assume that Plaintiff left Hardin Memorial Hospital with instructions to follow up with a hand care specialist for his right ring finger, as he alleges in the amended complaint.  (DN 15, PageID.60).

The SHP Defendants also produce a Medical Staff Receiving Screening Form dated February 21, 2019, which reflects that Plaintiff's vital signs were stable, and a notation was made to a "yes" response related to "fainted or head injury in the last 72 hours" noting, "hit by car, 2/20/19 staples on head." (*Id.*, PageID.720). Plaintiff also reported that he took methadone 5 mg on February 20, 2019. (*Id.*) They also attach a medical record showing physician orders, including an order initiated on February 21, 2019, stating, "Continue medication orders from Hardin Memorial Hospital" for the Bactrim and Keflex and an order for Tylenol 500 mg twice daily for 7 days. (*Id.*, PageID.721). The orders also show that protocols for drug and alcohol withdrawal monitoring were initiated. (*Id.*)

The SHP Defendants attach a progress note which indicates that on February 22, 2019, Plaintiff reported nausea and vomiting. (*Id.*, PageID.722). The progress note indicates that Plaintiff was undergoing "detox monitoring per protocol" and was given Phenergan 25 mg every 6 hours as needed and Bentyl 20 mg twice daily for 3 days. (*Id.*) They also attach a Refusal of Medical Treatment form which documents a refusal of medical care for "DT/neuro" at 08:30 on February 22. (*Id.*, PageID.723).

The SHP Defendants next attach a Sick Call Slip-Medical Request submitted by Plaintiff on February 23, 2019, complaining of heartburn for "5 days." (*Id.*, PageID.724). They attach an Inmate Request Form dated February 24, 2019, in which Plaintiff requested to be put in the "population please I'm no longer sick." (*Id.*, PageID.725). They attach a Refusal of Medical Treatment form documenting that on February 25, 2019, Plaintiff "refused sick call & detox." (*Id.*, PageID.726). They also attach Refusal of Medical Treatment forms dated March 1 and 2, 2019, showing that Plaintiff refused medication on those dates. (*Id.*, PageID.727-28).

The SHP Defendants also produce an Inmate Request Form stamped March 2, 2019, submitted by Plaintiff in which he states, "my finger is very messed up Its either broke or the tendents are severd I can't hardly wash my ass I bump it all the time its very painful and Im [illegible] I need medical attion.  Thank you." (*Id.*, PageID.729).  They maintain that this is the first time Plaintiff complained of any finger pain since arriving at HCDC on February 20, 2019. (DN 54., PageID.569).  The SHP Defendants attach an Inmate Request Form submitted by Plaintiff on March 3, 2019, stating, "ever sense I came from hospital Ive been having very very bad head aces to the point of driving me crazy my eyes hurt I see spots I see rings around my eyes I lose my [illegible] something very wrong please help.  Thank you."  (DN 61, PageID.730).

The SHP Defendants produce a Clinical Pathway/Patient Clinical Data Form dated March 4, 2019, which indicates that SHP medical staff saw Plaintiff for complaints of a headache and broken finger.  (*Id.*, PageID.731).   The SHP medial provider noted, "Claims that he broke his [right] ring finger over the summer of 18 but never went to the doctor."  (*Id.*) Additionally, the medical provider noted that "inmate has red, hand, [illegible] area of [right] ring finger[.]"  The form shows that the medical provider ordered ibuprofen 600 mg.  (*Id.*, PageID.732).

The SHP Defendants attach an Admission Data/History and Physical Form signed on March 6, 2019.  (*Id.*, PageID.733-34).  Where the form asks the inmate to name "current medical conditions/diagnoses you have[,]" Plaintiff left the answer field blank.  (*Id.*, PageID.733). When completing the questionnaire regarding his past history, Plaintiff noted "yes" responses to: Balance/dizziness, DTs/Withdrawal, headaches, nervous disorder, asthma, pneumonia, hypertension, stomach pain, heartburn, nausea/vomiting, and hepatitis.  (*Id.*, PageID.734).  In the

form's Assessment Notes, the SHP medical provider reported two current problems: "sees spots/rings" and "has dental caries." (*Id.*)  The form gives no indication that Plaintiff reported continued problems or pain associated with his finger, and the nurse noted "zero edema" with regard to his extremities.  (*Id.*)

The SHP Defendants next cite records of physician orders which show an order written on March 12, 2019, documenting that a follow up appointment had been scheduled with Jewish Hospital Hand Center on March 25, 2019, at 10:15 am.  (*Id.*, PageID.721).

The SHP Defendants attach a Clinical Pathway/Patient Clinical Data Form dated March 16, 2019, where Plaintiff was seen by a SHP medical provider for an abscessed tooth which he reported he had been experiencing for 4 days.  (*Id.*, PageID.735).  The form shows that the medical provider ordered Amoxil 50 mg twice daily for 10 days and ibuprofen 600 mg twice daily for 3 days.  (*Id.*, PageID.736).  The SHP Defendants next attach Refusal of Medical Treatment forms dated March 17, 18, and 22, 2019.  (*Id.*, PageID.737-39).

The SHP Defendants produce an Inmate Sick Call Slip-Medical Request dated March 24, 2019, in which Plaintiff reported that "my finger keeps getting infectdid.  It hurts all day everyday its stuck in a L positions." (*Id.*, PageID.742).  He reported that he had been having the problem for two months.  (*Id.*)  They also attach three Inmate Request Forms, each dated March 24, 2019, and each containing slightly different wording.  In the first, Plaintiff stated, "My finger is broke stuck in L shape its always hurting and making . . . me very bitter, mad and uncomfterble all the time please help me with this.  Thank you." (*Id.*, PageID.740).  In the second Inmate Request Form, Plaintiff stated, "My finger is broke stuck in L shape.  It keep getting infectedid and its draning please its always hurting and making me very bitter, mad, uncomfterble all the time pleas help.  Thank you." (*Id.*, PageID.744).  In the third Inmate

Request Form, Plaintiff stated, "My finger is broke stuck in L shape.  It keeps getting infected and draining please its always hurting and making me very bitter mad uncomfterble all the time please help me with this.  Thank you."  (*Id.*, PageID.746).  The third form contains an "Officer's Response" stating, "This issue is being addressed & treated by Kleinert Kutz Hand Care Center."  (*Id.*)  Defendants assert that this was the first time Plaintiff complained of finger pain, or any issues related to his finger, since March 4, 2019.  (DN 54, PageID.571).

The SHP Defendants next attach a medical record from Kleinert Kutz & Associates Hand Care Center ("Kleinert Kutz") dated March 25, 2019, showing that Plaintiff was evaluated by a hand specialist, Dr. Rodrigo Moreno, MD.  (DN 61, PageID.748-51).[4]  The record indicates that Plaintiff reported that his right ring finger injury was approximately one month old.  (*Id.*, PageID.748).  It states that the finger had a right ring finger deformity, "pain VAS 8, on and off discharge from the wound over RRF PIP."  (*Id.*)  The record indicates that the diagnosis was "dislocation of proximal interphalangeal joint of right ring finger, initial encounter . . .; Other acute osteomyelitis, right hand."  (*Id.*, PageID.750).  Plaintiff was prescribed Augmentin 875 mg twice daily for 45 days.  (*Id.*, PageID.749).  The SHP Defendants cite an attached medical note entered the same date ordering that the medications prescribed by Kleinert Kutz be started and noting that a follow up appointment was scheduled for April 8, 2019.  (*Id.*, PageID.721).

The SHP Defendants next attach records from Mid America Health, Inc. showing that Plaintiff had a tooth extracted on March 28, 2019, and was given ibuprofen 800 mg.  (*Id.*, PageID.752-54).  They produce a Sick Call Slip-Medical Request submitted by Plaintiff on

---

[4] The Kleinert Kutz medical record, attached to the SHP Defendants' renewed motion for summary judgment at Exhibit 17, is apparently inadvertently missing page four of the five-page document.  Defendants Lindblom and Hardin County attach page four of the medical record, which states after "Treatments" that Plaintiff was prescribed Augmentin and states, "discussed central slip reconstruction vs pip j fusion after infection is treated.  Currently no fluid or collection palpated."

April 4, 2019, for a complaint of sore throat and cough and stating "feel like very bad" for the past two days.  (*Id.*, PageID.755).  They attach a Clinical Pathway/Patient Clinical Data Form dated April 6, 2019, where Plaintiff was seen by SHP medical provider for "sore throat, scratchy throat."  (*Id.*, PageID.756).  The medical provider noted "currently on antibiotics for osteomyelitis" and ordered ibuprofen 600 mg twice daily for 3 days.  (*Id.*, PageID.756-57).

The SHP Defendants produce a medical record from Kleinert Kutz dated April 8, 2019. (*Id.*, PageID.758-61).  The record shows that he was seen by Claire Watkins, PA-C, who noted that Plaintiff had been on Augmentin twice daily for 3 weeks. (*Id.*)  The examination showed: "boutonniere deformity, unable to extend PIPJ.  75-90 ROM.  laceration over dorsal DIPJ healing.  no active drainage. +edema PIPJ.  No fluctuance."  (*Id.*, PageID.759).  The record shows that the treatment plan was to "[c]ontinue Augmentin 875 bid 3 more weeks (pt has Rx already).  Gentle passive ROM.  Plan for possible surgery – PIPJ fusion, central slip reconstruction, possible amp (requested by pt) to discuss w/ RM at next appt."  (*Id.*, PageID.760).

The SHP Defendants also produce an Inmate Sick Call Slip-Medical Request dated April 14, 2019, in which Plaintiff complained, "Im still having problems with very dry scalp my feet are also dry and cracking."  (*Id.*, PageID.768).  Next they attach a Clinical Pathway/Patient Clinical Data Form where Plaintiff was seen by a SHP medical provider for his complaint of "dry cracked feet" and was given foot cream on April 16, 2019.  (*Id.*, PageID.769-70).

The SHP Defendants also attach an Inmate Sick Call-Medical Request dated April 26, 2019, in which Plaintiff complained, "My finger is hurting really bad its been broke it has infection in the [illegible] need something please."  (*Id.*, PageID.771).  They next produce a Clinical Pathway/Patient Clinical Data Form showing that Plaintiff saw a SHP medical provider

on April 27, 2019, for "pain right ring finger." (*Id.*, PageID.772-73).  The medial provider noted that Plaintiff was requesting a wrap for his right ring finger or entire hand and "continued pain relief medication." (*Id.*, PageID.773).  The medical provider ordered no treatment at that time. (*Id.*)

The SHP Defendants also produce a medical record from Kleinert Kutz showing the Plaintiff saw Dr. Moreno on May 6, 2019.  (*Id.*, PageID.774-78).  Dr. Moreno noted, "developed infection, [right ring finger], finished antibiotics." (*Id.*, PageID.774).  His examination showed, "swelling mild, some redness, no signs of infection." (*Id.*, PageID.776).  For "Treatments," Dr. Moreno documented, "[Right ring finger] pip j fusion in the future, will wait at least 2 more months before deciding to fuse it" and recommended the next office visit in two months.  (*Id.*, PageID.777).

The SHP Defendants attach a Clinical Pathway/Patient Clinical Data Form, which shows that Plaintiff was seen by a SHP medical provider on May 12, 2019, for his complaint of dental pain.  (*Id.*, PageID.779-80).  Orders were initiated for Amoxil twice daily for 10 days and ibuprofen 800 mg twice daily for 3 days.  (*Id.*, PageID.780).  They next produce a Refusal of Medical Treatment form dated May 19, 2019, which indicates that Plaintiff refused his morning dosage of Amoxicillin.  (*Id.*, PageID.781).

The SHP Defendants next attach an Inmate Sick Call-Medical Request submitted by Plaintiff on June 12, 2019, stating his complaint as, "I'm getting too dryed out by the shower my ass crack Driving me crazy" and that he had the problem for "2 weeks maybe 3." (*Id.*, PageID.782).  They produce a Clinical Pathway/Patient Clinical Data Form dated June 13, 2019, showing that Plaintiff was seen for the rash by a SHP medical provider.  (*Id.*, PageID.783-84).

The provider noted, "small red patches above intergluteal cleft, as well as inguinal region 0 drainage" and made no new order.  (*Id.*, PageID.784).

The SHP Defendants next produce an Inmate Sick Call Slip-Medical Request submitted by Plaintiff on July 1, 2019, where he complained of a tooth abscess.  (*Id.*, PageID.785).  They attach a Clinical Pathway/Patient Clinical Form dated July 2, 2019, documenting that Plaintiff was seen by a SHP medical provider for dental pain.  (*Id.*, PageID.786-87).  The provider indicated that Plaintiff had a decayed tooth and noted that he was placed on the dental list.  (*Id.*)  According to the SHP Defendants' motion, Plaintiff was transferred to the Green River Correctional Complex very soon thereafter.  (DN 54, PageID.573).

The SHP Defendants argue that the SHP nursing staff "provided Mr. Shull with medical care and medication throughout his incarceration at HCDC, including scheduling and ensuring Mr. Shull attended his initial appointment with the Kleinert Kutz & Associates Hand Care Center per the discharge instructions from Hardin Memorial Hospital."  (*Id.*)  They maintain that the SHP providers "also ensured he received any and all medications prescribed by outside providers, and that he attended his two follow-up visits with the Kleinert Kutz & Associates Hand Care Center while he was in HCDC."  (*Id.*)  They assert, "There was never a time that Mr. Shull was denied care."  (*Id.*)  The SHP Defendants further argue that there is "ample evidence that Plaintiff was provided medical treatment and medications" and that, therefore, Plaintiff "cannot provide any evidence that these Defendants were deliberately indifferent to a substantial risk to his health" to establish a violation of the Fourteenth Amendment.  (*Id.*, PageID.577).  The SHP Defendants alternatively argue that they are entitled to qualified immunity.

## C.

Defendants Lindblom and Hardin County also file a renewed motion for summary judgment (DN 55). They attach Plaintiff's medical records related only to the treatment of Plaintiff's finger, which are largely duplicative of the records produced by the SHP Defendants with one additional document. They attach a medical record showing that Plaintiff had a follow up appointment at Kleinert Kutz on July 8, 2019, with Dr. Moreno for his complaint of "RRF pain." (*Id.*, PageID.630-35). As the "History of Present Illness," it was noted "rrf pip chronic pip j septic arthritis and dislocation. infection has been controlled now but persistent pain due to sublaxation a postx infectious OA." (*Id.*, PageID.630-35). It was noted that the treatment was "fusion of pip j due to cartilage damaged due to infection and dislocation. explained the procuedure. wants to go ahead and schedule to relief pain." (*Id.*, PageID.633).

Defendants Lindblom and Hardin County also attach two documents captioned "Judgment and Sentence on Plea of Guilty" entered in Hardin Circuit Court on May 24, 2019, showing the Plaintiff pleaded guilty to a number of charges. (*Id.*, PageID.637-45). They maintain that Plaintiff was transferred to Green River Correctional Complex on July 10, 2019, and has been in the custody of the Kentucky Department of Corrections since that date. (*Id.*, PageID.689).[5] They additionally produce Hardin County Fiscal Court Resolution No. 2018-086 documenting that Hardin County entered into a contract with SHP and attach a Health Services Agreement entered into between Hardin County and SHP. (*Id.*, PageID.646-50).

Defendants Lindblom and Hardin County argue that Plaintiff's claim against Defendant Hardin County fails because there is no evidence in the record that Hardin County "adopted a specific policy, procedure, or custom of not providing medical care to its inmates." (*Id.*,

---

[5] Defendants Lindblom and Hardin County do not cite any evidence to support this assertion, but Plaintiff did not dispute it in his response to the motion for summary judgment.

PageID.694).  They continue, "Just the opposite, the record shows that [Hardin County] provided medical care to its inmates as evidenced by the presence of [SHP] as a Defendant herein and the medical care provided by it to [Plaintiff] during his incarceration in [HCDC] . . . ."  (*Id.*) Defendants Lindblom and Hardin County argue that Hardin County "contracted with SHP to provide medical care to its inmates, and SHP assumed that responsibility, as evidenced by the attached contract."  (*Id.*)   They also point out that Plaintiff himself identified the HCDC policies on medical care in his first motion for summary judgment.  (*Id.*)   In sum, Defendants Lindblom and Hardin County argue that there is no evidence of record that any Hardin County policy or procedure "was the moving force behind the alleged deprivation of his Plaintiff's constitutional rights."  (*Id.*, PageID.694-95).

Defendants Lindblom and Hardin County argue that Plaintiff's individual-capacity claim against Defendant Lindblom is barred by qualified immunity.  (*Id.*, PageID.697-702).  They argue that Plaintiff cannot meet the modified standard under *Brawner* because the record of medical care they present "clearly shows that [Plaintiff] received both timely and adequate health care[]" and that his "bare assertion lacks significant probative evidence to support its claim." (*Id.*, PageID.701).  Moreover, Defendants Lindblom and Hardin County argue that, even though Plaintiff has failed to prove a constitutional violation, "the allegations of inadequate medical care could only be asserted against SHP since [Hardin County] had contracted with SHP to provide medical care to all the inmates secured at HCDC.  HCDC made no medical decisions regarding the care administered to its inmates since that responsibility was accepted by SHP."  (*Id.*, PageID.702).

Defendants Lindblom and Hardin County also argue that Plaintiff's claim are barred by the Prison Litigation Reform Act because Plaintiff failed to exhaust his administrative remedies.

14

**D.**

Plaintiff filed an unsworn response to the renewed motions for summary judgment, which he also captioned as a motion for summary judgment (DN 56).  He states that he has filed "sufficient evidence in his summer judgment showing a time line from bad to worst by showing doctor statements jail request forms and grievances county jail nures form and Jewish Hand Care specialist (Kleinert and Kutz) stateing Plaintiff needs surgery to his right ring finger."  (*Id.*, PageID.658).  He continues, "Kleinert and Kutz say the injury is a month old around 30 days, and they said it would of been able to fix the finger but the infection got into the bone and eat out the cartilage and now need reconstruction, fusion because the finger will no longer work again."  (*Id.*)  Plaintiff argues that if he had "been seen after telling the nurse staff his condition is worsting something could of been doun about the infections yealt he was seen and got medical treatment but needed something more when his finger got worst but never got that treatment . . . ."  (*Id.*, PageID.659).  He states, "They did not follow all discharge instructions [illegible] #1 from Hardin Memorial Hospital by not letting them know my finger was getting worst they said if it does contact ASAP and did not."  (*Id.*)  He asserts, "Let it go saying I was seen and this is why my finger can't be fixed by the time I got to Kleinert Kutz."  (*Id.*)

Plaintiff further states that "when I said I can't use my hand with right ring finger because the pain is so bad I was told by nurse staff to use the other hand" and that they "failed to act intentionally over and over."  (*Id.*, PageID.661).  He asserts, "I was seen and taken to appointments but by that time after ignoring my reqest and complaints it was to late to fix my finger.  I can prove it I have proper paperwork the nurse staff at the jail was very rood unprofeshanal and reckless . . . ."  (*Id.*)  He further maintains that he "complained time after time to HCDC medical staff nurses Jailer and other officers telling them my condition is getting worst

not better but I just cept getting told that there following the hospitols orders." (*Id.*, PageID.662).  He argues, "But my after care said over and over if my condition gets worst to go to the emergency room or call a Dr." (*Id.*)

Plaintiff attaches three pages of exhibits to his response, although he does not cite or refer to any specific exhibit in his response.  The first exhibit appears to be part of the records he received when he was discharged from Hardin Memorial Hospital.  (*Id.*, PageID.663).  The page provides information about caring for an injury to the scalp.  (*Id.*)  The information includes the direction, which Plaintiff underlined, "Call your healthcare provider right away if any of these occur:  Signs of infection, including increasing pain in the wound, redness, swelling, or pus coming from the wound." (*Id.*)  Next to that Plaintiff writes, "Did multipul times with no help." (*Id.*)  Plaintiff next filed the first page of the "General Instructions" issued by the Hardin Memorial Hospital, which the SHP Defendants attach to their motion.  (*Id.*, PageID.664).  The third exhibit is the prescription for Keflex written by a provider at Hardin Memorial Hospital on February 20, 2019, which the SHP Defendants also attach.  (*Id.*, PageID.665).

## II.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324).  The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III.

A convicted inmate is protected from cruel and unusual punishment by the Eighth Amendment, which includes a right to be free from deliberate indifference to an inmate's serious medical needs. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018).  An Eighth Amendment deliberate-indifference claim has both an objective and a subjective component. *Id*. at 937-38.

To meet the objective component, the plaintiff must show that the medical need is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To meet the subjective component, the plaintiff must show that "an official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837.  The plaintiff must demonstrate that the official was aware of facts from which an inference of substantial risk of serious harm to inmate health or safety could be drawn and that the official actually drew the inference. *Id.*

The Due Process Clause of the Fourteenth Amendment "forbids holding pretrial detainees in conditions that 'amount to punishment.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 405 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  Therefore, when a pretrial detainee asserts a claim of denial of medical treatment, the claim is analyzed under the Fourteenth Amendment. *Griffith v. Franklin Cty.*, 975 F.3d 554, 566-67 (6th Cir. 2020) (citing *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018)).  "The Sixth Circuit has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Richmond*, 885 F.3d at 937 (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).  In *Kingsley v. Hendrickson*, however, the Supreme Court analyzed the standard applied to an excessive-force claim brought by a pretrial detainee and eliminated the subjective prong of the deliberate indifference standard for such a claim.  576 U.S. at 397-400.  In *Brawner v. Scott Cty.*, 14 F.4th 585, 596 (6th Cir. 2021), the Sixth Circuit held that "*Kingsley* requires modification of the subjective prong of the deliberate-indifference test for pretrial detainees" in the context of a claim of deliberate indifference to serious medical needs.

Since the decision in *Brawner*, the Sixth Circuit has sought to clarify the specific standard to be applied to deliberate-indifference-to-serious-medical-needs claims brought by

pretrial detainees.  In *Greene v. Crawford Cty.*, 22 F.4th 593 (6th Cir. 2022), the Sixth Circuit

held the following:

> *Brawner* modified the second prong of the deliberate indifference test applied to
> pretrial detainees to require only recklessness: "A pretrial detainee must prove
> 'more than negligence but less than subjective intent—something akin to reckless
> disregard.'" *Brawner*, 14 F.4th at 597 (6th Cir. 2021) (quoting *Castro v. Cty. of
> Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).  In other words, a
> plaintiff must prove that the defendant acted "deliberately (not accidentally), [and]
> also recklessly in the face of an unjustifiably high risk of harm that is either known
> or so obvious that it should be known." *Id.* (citation and quotation marks omitted).

*Id.* at 605-06.  More recently, the Sixth Circuit decided *Trozzi v. Lake Cty.,* 29 F.4th 745 (6th Cir.

2022), which articulated the modified standard as follows:

> [A] plaintiff must satisfy three elements: (1) the plaintiff had an objectively serious
> medical need; (2) a reasonable officer at the scene (knowing what the particular jail
> official knew at the time of the incident) would have understood that the detainee's
> medical needs subjected the detainee to an excessive risk of harm; and (3) the prison
> official knew that his failure to respond would pose a serious risk to the pretrial
> detainee and ignored that risk.

*Id.* at 757.  Importantly, this standard still "ensur[es] that there is a sufficiently culpable mental

state to satisfy the []high bar[] for constitutional torts grounded in a substantive due process

violation." *Id.* at 758.  A showing of "mere negligence is insufficient." *Id.* at 753 (citing

*Brawner*, 14 F.4th at 596).

Plaintiff was a pretrial detainee from his entry into HCDC on February 20, 2019, until he

was convicted on May 24, 2019.  Because his claims seem to turn on the treatment he received

for his finger prior to May 24, 2019, the Court will apply the Fourteenth Amendment's modified

standard to his claims.

The parties do not dispute that Plaintiff's finger injury constitutes an objectively serious

medical need.

Turning to the modified standard as first adopted by the Sixth Circuit in *Brawner*, the Court first looks to the medical records produced by Defendants. The records show that between Plaintiff's entry into HCDC on February 20, 2019, and his transfer to Green River Correctional Complex on July 10, 2019, he was seen by SHP medical providers at least eleven times and additionally taken to Kleinert Kutz for an initial appointment and for three follow up appointments for treatment by a hand specialist. Plaintiff does not dispute the veracity of any of the medical records produced by the SHP Defendants.

While Plaintiff stated in his original complaint that he was brought to HCDC with "no medical treatment for my finger" (DN 1, PageID.4), it is clear that when he entered HCDC, he had just been treated for injuries, including his finger injury, at Hardin Memorial Hospital. (DN 61, PageID.716-19). There he was prescribed Bactrim for ten days and Keflex for seven days (*Id.*), which SHP medical providers ordered to be administered to Plaintiff, along with Tylenol. (*Id.*, PageID.721). The first time Plaintiff complained about his finger while incarcerated at HCDC was in an Inmate Request Form dated March 2, 2019. (*Id.*, PageID.729). According to the medical records produced by the SHP Defendants, Plaintiff was seen by a SHP medical provider two days later, on March 4, 2019, who examined his finger and ordered ibuprofen. (*Id.*, PageID.731-32). On March 6, 2019, the records show that Plaintiff received a physical examination where he reported a number of medical ailments in his medical history but did not report continued problems with his finger. (*Id.*, PageID.733-34). The SHP Defendants produced a record of physicians' orders which show an order written on March 12, 2019, noting that a follow up appointment had been scheduled for Plaintiff at Jewish Hand Care Center/ Kleinert Kutz on March 25, 2019. (*Id.*, PageID.721). The next time Plaintiff complained about his finger was on March 24, 2019, when he submitted an Inmate Sick Call Slip-Medical Request

(*Id.*, PageID.742) and three Inmate Request Forms.  (*Id*., PageID.740, 744, 746).  The following day, March 25, 2019, he was taken to Kleinert Kutz where he was treated by a hand specialist. (*Id*., PageID.748-51).  He was also taken to Kleinert Kutz for a follow up appointment on April 8, 2019 (*Id*., PageID.758-61).  Plaintiff next complained about his finger in an Inmate Sick Call Slip-Medical Request on April 26, 2019.  (*Id*., PageID.771).  He was seen by a SHP medical provider the next day, April 27, 2019, and the medical provider ordered no treatment on that date.  (*Id*., PageID.772-73).  Plaintiff was taken to Kleinert Kutz for a second follow up appointment on May 6, 2019, (*Id*., PageID.774-78) and for a third follow up appointment on July 8, 2019 (DN 55, PageID.630-36).  Surgery was recommended by the hand specialist at that time, but Plaintiff was transferred to the Green River Correctional Complex on July 10, 2019.  (*Id.*, PageID.689).

The Court provided instruction to Plaintiff that in order to defeat summary judgment, he must demonstrate a genuine issue of material fact for trial; must support this assertion by citing to facts that can be presented in a form that would be admissible in evidence; and must support his facts with affidavits and/or other documents contradicting the material facts asserted by Defendants.  (DN 48).  Plaintiff attaches no records to his response to the renewed motions for summary judgment to show that he made any requests for treatment beyond the requests that he made in the medical records produced by the SHP Defendants described herein.  Plaintiff makes conclusory arguments in his unsworn response to the motions for summary judgment that he "complained time after time to HCDC medical staff."  (DN 56, PageID.662).  However, as stated above, a party cannot rely on allegations or denials in unsworn filings when opposing summary judgment.  *Viergutz*, 375 F. App'x at 485; *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he

"failed to present any evidence to defeat the government's motion"). Plaintiff produces no medical records to support his unsworn allegations.

In this context, the Court "cannot 'impute knowledge from one defendant to another[,]' [but] must 'evaluate each defendant individually[.]'" *Greene*, 22 F.4th at 607 (citing *Speers v. Cty. of Berrien*, 196 F. App'x 390, 394 (6th Cir. 2006)); *see also Trozzi*, 29 F.4th at 758 (evaluating "how the modified deliberate-indifference test applies to each defendant"). Therefore, the Court must examine whether Plaintiff can show that each Defendant acted individually with "a sufficiently culpable mental state" to establish a Fourteenth Amendment violation. *Trozzi*, 29 F.4th at 758.

### *Defendant Fernando*

In Plaintiff's verified amended complaint, which can be used as evidence in opposing a motion for summary judgment as explained above, he alleged that Defendant Fernando looked at his finger "and said we don't treat that kind of injury said it was cosmetic . . . ." (DN 15, PageID.60). Plaintiff does not give the date that Defendant Fernando examined his finger, and he produced no medical record documenting the exam.[6] Construing Plaintiff's allegation as true, the Court presumes that Plaintiff would argue that Defendant Fernando violated the Fourteenth Amendment by not sending him to a hand specialist or other outside care after he examined the injury. However, that argument amounts to a difference of opinion about the proper course of treatment. Such a difference of opinion "is not enough to establish deliberate indifference under *Brawner*'s modified approach." *Trozzi*, 29 F.4th at 759 (citing *Greene*, 22 F.4th at 614; *Darby v. Greenman*, 14 F.4th 124, 129 (2d Cir. 2021) (holding, after *Kingsley*, that "a difference of

---

[6] The Court also examined Plaintiff's attachments to his first motion for summary judgment (DN 43), which the Court denied (DN 52). Plaintiff attached no medical records or requests for treatment to his motion beyond those produced by the SHP Defendants and described herein.

opinion about the proper course of treatment" does not demonstrate deliberate indifference)).

Defendant Fernando examined his finger and deemed the injury cosmetic.  The decision not to

send Plaintiff to a hand specialist or other more aggressive treatment may have been a poor

medical judgment, but that decision would amount to negligence.  However, "[f]ar more [than

negligence] is required to establish a constitutional violation."  *Id.* (citing *Brawner*, 14 F.4th at

596; *Greene*, 22 F.4th at 614).  As the Sixth Circuit found in *Greene*,

> With the benefit of hindsight, it is easy to say that [Defendant] should have
> encouraged the jail to call for immediate medical assistance.  But [Defendant]
> 'performed [her] duties.  That [she] did not take the extra step of bringing the need
> for more aggressive intervention to [the jail], that failure at most . . . amounts only
> to negligence."  *Smith* [*v. Cty. of Lenawee*], 505 F. App'x [526,] 536 [(6th Cir.
> 2012].  And evidence of "[m]ere negligence is insufficient" to survive summary
> judgment on a deliberate indifference claim.  *Brawner*, 14 F.4th at 596.
> [Defendant] evaluated [Plaintiff's] risk of self-harm  and placed the jail officials on
> notice that Greene was not experiencing a mental health crisis.  Even viewing the
> facts in the light most favorable to the estate, [Defendant] was not deliberately
> indifferent.

22 F.4th at 614.

Similarly, the Court finds that Plaintiff has shown the possibility that Defendant

Fernando was negligent in examining his finger, but Plaintiff has produced no evidence that

Defendant Fernando knew that his finger injury was not cosmetic or that he required more urgent

treatment which would pose a serious risk to Plaintiff and ignored that risk  *See Trozzi*, 29 F.4th

at 757.  Thus, Plaintiff has not shown that Defendant Fernando acted with the requisite level of

intent to establish a Fourteenth Amendment claim under the modified standard.  Accordingly, the

Court finds that Defendant Fernando is entitled to judgment as a matter of law on the claim

against him in his individual capacity.

### *Defendant Godsey*

In the verified amended complaint, Plaintiff alleged that he "told the nurse Cathleen Godsey that I couldn't wipe my buttox and she said use your other hand."  (DN 15, PageID.60).  Plaintiff does not provide a date when this occurred or produce a medical record or other evidence documenting the statement.  Therefore, it is unknown in what context the statement was made—in the context of a medical visit or elsewhere.  Construing the allegation as true, Plaintiff provides no facts as to what he informed Defendant Godsey about his finger or what information was available to her when she made the statement to him.  Plaintiff has provided no factual basis that allows the Court to infer that she was actually aware of his complaints about his finger injury, that she understood the severity of the injury, and that she ignored his condition anyway.  *See Darby*, 14 F.4th at 131 (holding that the pretrial detainee "provided no factual basis that would allow us to infer receipt [of the plaintiff's grievances complaining about dental problems] or (even assuming receipt) to impute to the Doe Defendants knowledge of the severity of [the plaintiff's] condition").

Thus, the Court can only speculate what Defendant Godsey knew about Plaintiff's injury at the time she made the alleged statement.  However, the medical records produced by Defendants show that Plaintiff requested treatment for his finger on March 2, March 24, and April 26, 2019, and each time he was not ignored; rather he was seen by a medical provider within two days.  The Court cannot find, based on Plaintiff's one-sentence allegation against Defendant Godsey in the amended complaint, that a reasonable person in her position would have understood that Plaintiff's medical needs subjected him to an excessive risk of harm; that Defendant Godsey knew that her failure to respond would pose a serious risk to Plaintiff; and that she ignored that risk.  *See Trozzi*, 29 F.4th at 757.  Accordingly, the Court finds that Godsey

24

is entitled to judgment as a matter of law on the claim against her in her individual capacity.

### *Defendants Santoes and Amber*

Plaintiff has not provided any allegations or evidence demonstrating how Defendants Santoes or Amber were deliberately indifferent to his medical needs. While his amended complaint mentions "several named nurse staff[,]" in order to meet the subjective component of the modified deliberate-indifference test, Plaintiff must show "a sufficiently culpable mental state" on the part of each individual Defendant. *Trozzi*, 29 F.4th at 758. Plaintiff has failed to explain what knowledge these Defendants may have had, if any, concerning the seriousness of his injury or how he believes that they ignored the risk. Therefore, the Court finds that Defendants Santoes and Amber are entitled to judgment as a matter of law on the claims against them in their individual capacities.

### *Defendant Lindblom*

Plaintiff alleged in the verified amended complaint that "Lindblom new about my injurys for a long time befor taking me to hospital" and that "he new the nurse staff wasn't seeing me so I feel hes at fault as well." (DN 15, PageID.61). Again, construing the allegation against Defendant Lindblom as true, the allegations are conclusory and provide no factual basis for the Court to infer that Defendant Lindblom actually knew of Plaintiff's complaints about his finger, that he understood the severity of the injury, and that he ignored Plaintiff's complaints anyway. Plaintiff likewise produced no documents in response to the renewed motions for summary judgment showing that Defendant Lindblom was aware of Plaintiff's finger injury or its severity. The Court observes that one of the Inmate Request Forms produced by the SHP Defendants dated March 24, 2019, while not entirely clear, appears to be addressed to "Jailer Big John."

(DN 61, PageID.741).  To the extent Plaintiff would argue that Defendant Lindblom was made aware of his injury based on this Inmate Request Form, Plaintiff was transported to Kleinert Kutz where he saw a hand specialist the following day, March 25, 2019. (*Id.*, PageID.748-51).  Therefore, Plaintiff cannot argue that Defendant Lindblom ignored his medical needs after receiving the Inmate Request Form.[7]

Moreover, the Sixth Circuit has "recognized that a 'non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he 'reasonably deferred to the medical professionals' opinions.'"  *Greene*, 22 F.4th at 608 (citing *McGaw v. Sevier Cty., Tenn.*, 715 F. App'x 495, 498 (6th Cir. 2017)).  Plaintiff has not shown that Defendant Lindblom showed deliberate indifference in deferring to the medical judgments of the SHP and Kleinert Kutz medical providers.  *See Trozzi*, F.4th at 759 ("Having received a diagnosis from a medical professional, no reasonable officer in [the defendant officer's] position would be expected to second guess that diagnosis.") (citing *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) (noting that if medical professionals were unable to recognize that a detainee needed medical care, it could not have been apparent to a lay officer)).  For these reasons, the Court finds that Defendant Lindblom is entitled to judgment as a matter of law on the claim against him in his individual capacity.[8]

---

[7] The Court examined Plaintiff's attachments to his first motion for summary judgment (DN 43).  The only documents that Plaintiff produced which could arguably show that Defendant Lindblom was made aware of his injury were two grievance forms Plaintiff submitted complaining about lack of care for his finger injury.  (*Id.*. PageID.278, 282).  However, both grievances were dated March 24, 2019, the day before he was taken to Kleinert Kutz.

[8] The Court need not address Defendants' arguments regarding qualified immunity or failure to exhaust administrative remedies because the Court finds that Defendants are entitled to summary judgment for the reasons stated herein.

### Defendants Hardin County and SHP

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978). A plaintiff may only hold a municipal entity liable under § 1983 for the entity's own wrongdoing. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (citing *Monell*, 436 U.S. at 692-94). The Sixth Circuit has held that the same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation, such as Defendant SHP. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.") (citing *Monell*, 436 U.S. at 691). Moreover, Plaintiff's official-capacity claims against the SHP nurses are actually brought SHP as their employer. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Liability of a municipality or a contracted private entity must be based on a policy or custom. *Street*, 102 F.3d at 818; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). To state a claim, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body [or entity] under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). To establish a municipal or

corporate custom or policy, a plaintiff must sufficiently demonstrate:  "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  The standard for bringing a § 1983 claim against a municipality is a "high bar[,]" and "[a] *Monell* claim that survives summary judgment is exceedingly rare."  *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 541-42 (6th Cir. 2018); *see also North v. Cuyahoga Cty.*, 754 F. App'x 380, 392 (6th Cir. 2018) (holding that the inmate failed to show "the kind of widespread, gross deficiencies that would support a finding" of municipal liability).

The Court has found herein that Plaintiff failed to establish that the Defendant SHP nurses or Defendant Lindblom showed deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment.  However, even if Plaintiff could establish deliberate indifference on the part of any of the individually named Defendants, he still offers no argument or evidence of a policy or custom on the part of Defendant Hardin County or SHP which could have been "the moving force" of any such conduct.  *Searcy*, 38 F.3d at 286.  Specifically, he has failed to identify an official policy, an official with decision-making authority who ratified any illegal actions, the existence of a policy of inadequate training or supervision, or the existence of a custom of tolerance of or acquiescence to federal rights violations.  The Court observes that Plaintiff attached thirty pages of Hardin County Jail Policies to his first motion for summary judgment.  (DN 43 PageID.206-36).  However, he fails to show how any of these policies could

have caused any individual to deny him treatment for his finger injury.  Therefore, the Court

finds that Defendants Hardin County and SHP[9] are entitled to judgment as a matter of law.

**IV.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is

hereby

**ORDERED** as follows:

(1)      Defendants' renewed motions for summary judgment (DNs 54 and 55) are

**GRANTED**.  The Court will enter a separate Judgment dismissing the action.

(2)      The Court having determined that Defendants are entitled to summary judgment,

Plaintiff's motion for summary judgment (DN 57) is **DENIED**.

Date:     August 25, 2022

**David J. Hale, Judge**
**United States District Court**

cc:      Plaintiff, *pro se*
          Counsel of record

4415.010

---

[9] Since the official-capacity claims against the SHP nurses are actually brought against SHP, those claims are encompassed in the analysis of the claims against SHP.